Battelle & Co. *v.* Youngstown Rolling Mill Company.

J. G. BATTELLE & CO. *v.* THE YOUNGSTOWN ROLLING
MILL COMPANY *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Plea and answer.* The defendant to a bill in chancery may plead to the jurisdiction ·of the court, and after an unsuccessful trial upon the plea, he may answer to the merits of the bill.

2. SAME. *Jurisdiction. Fraud.* B. claimed by reason of a breach of contract that Y., a non-resident of the State, was indebted to him. In order to get jurisdiction he procured M. to purchase some property of Y. and attached the price. *Held,* that the jurisdiction was obtained by fraud, and bill was dismissed.

---

FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

METCALF & WALKER for complainant.

H. TOWNSEND and GEO. GILLHAM for defendants.

FREEMAN, J., delivered the opinion of the court.

This is an original attachment bill filed against defendants, the corporation known as Youngstown Rolling Mill Company, as non-residents, and the First National Bank of Memphis, a corporation doing business in that city. The bill claims a debt of over $4,000, due by reason of a breach of contract to deliver certain hoop iron, as per contract set out. In order to get jurisdiction of defendants, the Rolling Mill, a fund of over $900 belonging to it, in the National Bank, was attached.

The Rolling Mill Company appeared and filed a

plea in the nature of a plea in abatement, to the jurisdiction of the court, averring that "the complainants decoyed the property of defendant, the same, or proceeds of which, is herein attached, from and out of the State of Ohio, the place of their residence, into the State of Tennessee, and county of Shelby, for the purpose of attaching the same, and giving the courts of Tennessee jurisdiction of the matters of controversy," etc. This plea was set down for argument on its sufficiency, and held to be good by the chancellor. Thereupon the complainant made up an issue as to its truth in fact, which, coming on to be heard, on the proof, the court decreed that the plea was not sustained, "and is found to be false." He then gave the defendant leave to answer in thirty days, the defendant excepting as to his finding on the issue.

The complainants excepted to the allowance of leave to answer, insisting, the plea of defendant being found false, the complainants were entitled to a final decree, the defendant, however, insisting on the right to answer, which was sustained by the chancellor.

The defendant answered, proof was taken, and the case heard, when the chancellor decreed the complainants had failed to make out their case on the merits, and dismissed the bill, from which decree there is an appeal in error to this court.

The first question is, whether the court erred in overruling complainants' demand for a final decree, when the issue of fact was found in favor of complainants, and in permitting the respondent to answer, or his claim to do so?

The case of *Wilson* v. *Scruggs*, 7 Lea, 635, is re-
lied on to sustain the contention of the complainants.
But that was a case of plea of personal privilege,
where the plea was simply adjudged insufficient, and
the court held that by answering over to the merits,
and not standing on his plea, it was abandoned. The
case before us is not that, but where the plea has
been held sufficient, but on trial on the facts, untrue.

The ruling in the *Scruggs* case, we take it, must
be confined to the precise case in hand. In the case
of *Whitaker* v. *Whitaker*, 10 Lea, 97, there was a plea
to the jurisdiction of the court, which was held "insuf-
ficient to abate or bar the action," and properly over-
ruled. · This court held, that "upon overruling a plea
for insufficiency, the defendant is, of course, entitled to
answer, under Code, section 4395."

The two opinions· can only stand together when
we limit the rule laid down in the first to the case
before the court, of a plea of personal ·privilege, but
as having no application to a general plea to the ju-
risdiction of the court, or to any other case where a
plea is held insufficient by the court. The plea in
the present case is a plea to the jurisdiction, as in
the 10 Lea case. But, in fact, no good reason is
seen for the distinction. But in neither that case or
the 7 Lea case, was there a trial of the issue on the
plea, and a finding the plea untrue, in fact, as in the
case before us.

We propose to examine the cases in our State, on
which it is assumed to be settled, that a defendant
can not be allowed to answer to the merits in a court

of chancery after a plea to the jurisdiction, asserting facts to defeat such jurisdiction, is found, on trial of an issue on the plea, to be unsustained. It is believed all the cases in our reports rest on what was supposed to be decided in the early case of *Bacon* v. *Parker,* 2 Tenn. Rep. (Overton), 55. That was a case at law, and stands alone on the strict technical theories of that day, now among the rubbish, to a great extent, of the past, serving to mark a stage of the growth of our jurisprudence, but one to which we can never return. It was an action of debt for $300, a plea in abatement, that on the day of suing out the original writ, Bacon, the plaintiff and defendant, were residents of this district; and that it appears by credits endorsed on the obligation, the demand was reduced below the sum of $250 or £100, wherefore the plea prays judgment of the court, etc. At this time the district court had no jurisdiction in such a case over cases involving a less sum than stated in the plea.

A motion was made to strike out the plea, and on this question the opinion was delivered. The court simply decided the plea bad, as it obviously was, on the technical grounds, not having craved oyer of the instrument sued on, or its endorsements, so as to make them part of the record, and the issue tendered being to the court and not to the country. It is seen, there was no case of a trial of the plea, as to its truth, and could not be, and so the court simply set aside the plea, and allowed defendant to plead to the merits, or, to use the language of the opinion, "in chief."

But the court did agree upon a *dictum* in that case, and which may not be erroneous, as applied to just such a case, but has no proper application as a general rule. The court say, "if this plea were sustainable, the defendant should have craved oyer, and showed the endorsement on the record, for a court can not look out of the record, nor, in the discussion of a plea in abatement, look beyond the points forming the ground of exception. The plea, therefore, must be considered as involving facts proper for the determination of a jury. After saying that the defendant must not in any case be entitled to be heard by proof in mitigation of damages, after such a plea, the reason is given that in every such case it would involve two trials; first, the trial of the issue on the plea in abatement, *involving the whole merits of the question in ascertaining the sum really due,* and if found against the defendant, the plaintiff may have to wade through the execution of a writ of inquiry equally as tedious and perplexing. They then say, the act of 1794, under which the question arose, clearly meant the exception to the jurisdiction should be made after the trial, instead of in the way it was done. So that there were two grounds raised by the record, conclusive of the case, and what was said was doubly *dictum.*

But the reason given for the rule only applies to the case in hand or one like it, that is, where the plea is one involving a fact to be tried by a jury, a debt being admitted, credits only claimed, and the amount of these the inquiry; in other words, where the same question of fact is involved in both cases.

How this can possibly have been used to support the theory now maintained for the practice in a court of chancery, it would be difficult to see. It suffices, it was a case at law, and such a case as involved truly, on the rule declared, a retrial of the precise same question, if the general issue or payment had been pleaded. The case can stand for the rule in such a case, but certainly the maxim of our law, that "where the reason ceases the rule ends," fairly prevents its proper application to a case where the trial of the truth of the plea has no possible relation to, or even tendency to, solve the merits of the controversy between the parties. Judge Cooper, in his edition of our reports, after placing a *head* note to the case, that the rule is held in the case as a general one, adds a *foot* note expressing his doubt of its correctness in these words: "How far the ruling in this particular case may justify the general principle of this head note, and the application of it to all cases of pleas in abatement, as implied by the decision in 5 Cold., 127, citing this case, may admit of doubt." This was far enough for an editorial dissent, but this court may give it emphasis by repudiating such unauthorized application.

The case of *Straus* v. *Weil*, 5 Cold., 120, 129, was an attachment at law, and, therefore, can decide nothing as to a case in equity, even if what is said on the question had been involved in the case for decision. But, in fact, it was *dictum*, and could not have been adjudged on the record in that case. It was an attachment issued by a justice and returned to the circuit

court, and a declaration filed. The defendant filed a plea in abatement to the attachment on which issue was taken and found against him. He moved for a new trial, which was overruled, and then for an appeal, which was refused, and, "thereupon," says the judgment, "it was considered by the court, that the defendant, being so present in court, in person and by attorney, that he plead to the merits; and the defendant, in person and by attorney, declined and refused to plead, the plaintiff then and there offering, if defendant would plead and show, by affidavit, merits, to consent to a continuance, and upon his refusing to so plead, a judgment by default was taken and a writ of inquiry awarded, and judgment on verdict of a jury, from which there was an appeal by defendant." The questions made, or for decision were, whether the defendant had appeared so as to give the court jurisdiction of his person, and whether there was an issue for the jury to try. Both questions were held against defendant, and this was conclusive of the result. But the learned special judge in that case then went on to discuss the question of an error in favor of the defendant of which he could not have complained, and conclude that the court had erred in offering to let defendant plead over, which he had refused. The Tennessee case cited in support of the view taken is the one we have commented on: 2 Tenn. Rep., 55.

The ingenious argument in support of the rule in that case is as strong as can be made in favor of it, that is, that a defendant knows the strength of his case, and if he chooses to rely on a plea in

abatement rather than the actual facts, he ought to be compelled to stand on that. This argument assumes the conclusion that the party has relied on his plea in abatement in preference to a defense on the merits, when on sound principle no such thing is done or intended.

The fact is, the law gives the right to plead in abatement in certain cases. It equally gives, in all cases, the right to defend on the merits against an unfounded claim. The real question is, does it give these rights with a forfeiture of any legal right if exercised? If not, has the court the right, in a case of manifest injustice, to impose such penalty? It is clear this is the principle on which the theory rests, for if a plea in abatement is filed, and the facts averred not proven to a jury or a chancellor, however close the issue on them, the party loses his right to test the claim on its merits. If he defends to the merits at first, he must do so at the sacrifice of his right to plead in abatement or to the jurisdiction.

In cases of a trial at law by a jury, the verdict is almost conclusive of the result, even though. seen by this court to be wrong, or not such as we would have rendered, yet it must stand under our rule. So that the merits must, under such a theory, be sacrificed to the verdict of a jury on another and different question, and that where it is evident the party had good ground to believe he could successfully maintain the defense, and this court see he ought to have succeeded. In other words, he must submit to the jurisdiction, although he believe fraudulently obtained, or forego an investigation or hearing on the merits.

But to the other cases in our State. *Chambers* v. *Halsey & Edgington,* Peck, 159, was a plea in abatement to an original attachment, demurred to or moved to be stricken out, and the motion overruled, but afterward the plea stricken out. The judgment was reversed and the plea reinstated, the case directed to be proceeded in on said plea, notwithstanding the defendant had afterward plead in bar to the merits, it being held no waiver of the plea. This case holds the true principle on the question at law.

*Rainey* v. *Henderson,* 4 Hum., 447, was a case at law, where a demurrer had been properly sustained to a plea in abatement, and defendant allowed leave to plead over, and failed to do so. The court gave judgment final, because of such failure, but recognized the right to plead over.

*Boone* v. *Ralh,* 4 Heis., 15, was at law. Defendant declined to plead over, and the court said he had a right to do so, and the demurrer to the plea having been sustained below, it was reversed and remanded for trial on the plea.

*Robb* v. *Parker,* 4 Heis., 58, was a plea in abatement to an ancillary attachment, which issue the court said should have been tried, if desired by defendant, on the issue presented separately from the case on the merits, so that the question was not involved.

The case of *Hendrick* v. *Davis,* 3 Cold., 527, presented the very question. The chancellor, on the proof, decided against the truth of the plea in abatement, and ordered the property attached sold, without an answer, and for this the decree was reversed.

Judge Milligan gives a sound reason for the opinion when he says, "a plea in abatement was the proper and only remedy to which defendant could have resorted, because an answer to the merits would have waived the jurisdiction."

The case of *Klippin* v. *Powell*, 6 Heis., raised the precise question. It was insisted, on rehearing, that the filing of an answer was a waiver of the plea in abatement. It was held the chancellor erred in overruling the plea, "and the party could not be held to rest his case alone on the question, whether the chancellor erred in overruling his plea." He was bound to answer or stand alone on the plea. "The answer," say the court, "could not be held to cure the error of the court, and overrule its decree. He was entitled to raise the question by plea, and was deprived of its benefits by the action of the court."

*Martin* v. *Ramsey*, 7 Hum., 260, was a plea of personal privilege by witness attending court on subpœna. The plea was overruled and defendant demurred. It was held no waiver of the plea. There is probably an error in the report saying the bill was dismissed, but this does not affect the principle decided, that answering over, after erroneous action by the chancellor on a plea in abatement, is no waiver of the plea.

This case may be considered as shaken, if not overruled, by *Wilson* v. *Scruggs*, 7 Heis., in a case of personal privilege, but in the case in 10 Lea, settles that, in other cases, he is to answer, as of course.

These are all the cases in this court, we believe, where these questions have been adjudged.

There is no case where the principle contended for has ever been applied in a case in chancery, and none ought to be, nor any at law, where the question was before the court for adjudication. Mere *dictum* is not decision or authority. It would be an adherence to an arbitrary technical rule, sustained formerly at law, in some cases, at the sacrifice of right, and based on no reason involving the right of the parties.

Why should the party in this case, or in any case, be precluded from a trial on the merits by the decision against him on a question of jurisdiction? This is always a preliminary question by its very nature. If the jurisdiction is conceded by defendant without contest, it only involves a trial of the merits. Why should a decision in favor of the jurisdiction by the chancellor, or even a jury, carry any more force? The *res adjudicata* only goes to the facts in issue involving this jurisdiction. To say the merits are settled by it is arbitrary assumption—not true. To treat it as true is arbitrary and contrary to the fact; to deprive the defendant of an investigation of his rights, and it may be, deprive him of a right, without even a hearing, equal to doing it without due process of law. In fact, it might be seriously questioned, whether such a practice is not a violation of this provision of our Constitution. At any rate, it is practically as effective as if the party had been permitted no defense at all, and violative of the spirit if not the letter of the Constitution. The true principle is,

that the case shall stand as *res adjudicata* in its further progress, precisely to the extent that a fact has been adjudged, and the decree be subject to review in this court as in all other cases of an interlocutory decree, not settling finally the matters in contest, after such final settlement by final decree, and an appeal or writ of error prosecuted to review the whole case by this court. Logically, it can not be, or in fact, that the question of whether the court has rightly obtained jurisdiction can settle the question as to whether the complainant in this case has a good cause of action for breach of contract against the defendant, nor would such be the logical result in any case, unless it may be such a case as the one in 2 Tenn. Rep. on which we have commented.

The principle that underlies what we have maintained is what is laid down in our works on Equity and Pleading, and is discussed by Chancellor Walworth in *Townshend* v. *Townshend*, 2 Paige Rep., 414, 415: "That where the court decides against the validity of a plea in bar on the merits, the defendants will not be permitted to give the same facts in evidence on the trial at law on the general issue," the practice in chancery being, as he says in the previous part of the opinion, that the same matter can not be introduced in the answer unless specially so allowed in the decree on overruling the matter of the plea. That is, the party shall not try the same question a second time, unless he is so permitted by the order of the court, naming the question. But the whole theory of the decision is, that he may answer as to all other

matters not embraced in the plea. The plea to the jurisdiction does not involve the merits in any way, and no answer could be put in to the merits before that plea is disposed of, but would necessarily waive the plea and be repugnant to it. So the defendant is compelled to wait the action of the court on the plea.

The true principle is, that a decision on a plea shall be held to conclude all that was in issue on that trial for all the purposes of that case, but matter not in any way put in issue, investigated or determined by that trial, shall be open for investigation, under such pleadings as the parties may present, and on such issues the court shall act, subject to revision by this court.

By section 5153, of new Code, it is provided, "If the plea be found false, the complainant shall have the same advantages as if it had been so found by a verdict at common law." Whatever is meant by "advantages" in this, it can not fairly be strained to mean that it forbids an answer to the merits after such finding, and the jurisdiction is sustained. It would be a conclusion purely arbitrary to push it to such a result. Suffice it to say, the language does not require such a rule of practice, one so little in accord with the attainment of justice, and, as we think we have shown, so entirely illogical from the premise. This case well illustrates the want of logical sequence in what is claimed. The defendant pleads the want of jurisdiction because he says his property was fraudulently brought within the jurisdiction and attached.

Proof is taken on that issue and found untrue. The rule contended for is, therefore, you are indebted $3,000 or $4,000 for breach of a contract to deliver three hundred tons of iron, and must have a decree as on confession, and risk all this on appeal, where if this court agrees with the chancellor, the decree on *pro confesso* will be affirmed, with no chance to deny the liability. No such practice is required by the statute, and no such statute would ever be passed. A majority of the court is of the opinion that the defendant had the right to answer over to the merits after the trial of his plea, and it is so adjudged.

The Referees report that the chancellor erred in finding the plea of defendant was false in fact. To this complainant excepts and say, "The testimony offered at the hearing on the plea establishes that there was no fraud, misrepresentation or concealment, or suppression of fact practiced in order to induce defendant to make sale of the iron to John Monogue. The real facts and the apparent facts were the same. The defendant made sale of said iron to said Monogue, knowing at the time that plaintiffs resided in Memphis, Tennessee, and intended to bring suit against it on the claim set forth in the bill. This exception is pointed to the facts bearing on the issue made by the plea as they appear in the proof, and raise the question whether what is shown makes out a case of fraud on the jurisdiction, so as to sustain the plea and dismiss the present bill.

The proof on this question makes out this case: The complainants, intending to attach the iron or pro-

ceeds so as to get their suit tried at home, procured Monogue, who was a dealer in iron at Memphis, to purchase iron from defendant, and agreed to take it from him at an advance of one dollar per ton when received by him. Monogue knew the purpose of complainant was to get an attachment on the defendant's property, and was willing to buy the iron and give the complainants a chance to attach proceeds for the sake of the profit offered him. He bought in the regular course of his business, and paid for the iron when the draft came and was presented, precisely as agreed, and in a few weeks after complainants paid him as per contract. The iron was delivered direct to complainant on arrival, on the order of Monogue. Defendant company knew complainant claimed damages for alleged breach of contract in not delivering the iron about which they had been negotiating, and intended to sue them, but they did not know that this iron was ordered by Monogue at their instance, in order, on complainants' part, to furnish the basis of an attachment in Tennessee. If they had known this, it is pretty certain they would not have accepted the order of Monogue for the purchase of the car load of iron.

It is argued, that all the facts were known to defendants which involved the risk of an attachment, the claim of complainants, that they lived in Memphis where Monogue lived and did business, and they, with such knowledge, took the risk and have been caught. They certainly did know all the facts involving the risk except the fact that Monogue was ordering the

24—VOL. 16.

iron for complainants, and they would certainly know when it arrived and have the chance to reach its proceeds by attachment. The only difference in the risk in this case, however, and in the case of a sale to any other merchant in Memphis, is in the facility for finding out that the money of respondents was in Memphis in this case, whereas, in a sale to another party, the chances were less that this discovery would be made.

Is this a case within the principle of *Timmons* v. *Garrison*, 4 Hum., 148, where a negro was decoyed into this State from Georgia, for the purpose of obtaining jurisdiction, as the basis of a suit in our courts. Judge Turley, in that case, says: "The attachment laws were made to enable our citizens, who have debts due them by non-residents, to subject the property of their debtors, which may be found in the State, to their demands, without being compelled to pursue redress in a foreign tribunal, but it would be monstrous so to construe them as to enable a rapacious creditor to give jurisdiction to our courts against non-residents by purloining their property and bringing it into the State."

This case was unquestionably decided rightly, the proof showing, as said by the learned judge, that complainant did entice and procure the negro to come to Tennessee for the purpose of attaching him.

Suppose, however, the creditor in this State had procured a third party to purchase the slave from his owner, at an agreed price to be paid by a draft attached to the bill of sale, this bill of sale to be

delivered on payment of the draft, and in the meantime had shipped the negro, to be delivered on presentation of the bill of sale.    The cases would then have been identical.    Is the legal result the same in the one case, however, as in the other?    A majority of the court is of the opinion that the proof sustains the plea, and the chancellor erred in finding it untrue. This being so, the decree on this point is reversed, and rendering the decree the chancellor should have rendered, the plea is held true, and complainants' bill dismissed with costs.

COOPER, J., dissents to the opinion on the point of allowing the respondent to answer after finding the plea untrue.

COOKE, J., also dissents on the point that the plea is false, holding the facts do not make a case of fraud in obtaining jurisdiction.    I very much doubt, myself, on this question.