Bryan v. Railroad.

J. H. BRYAN, Administrator, *v.* NORFOLK & WESTERN
RAILWAY COMPANY.

(*Knoxville.* September Term, 1907.)

1. **ATTACHMENT. Motion to quash, for apparent defect; plea
in abatement for defect not apparent.**

Where a defect appears on the face of the attachment, it is not
necessary that the legal question should be raised by a plea in
abatement; but in such a case the proper practice is by a mo-
tion to quash. The plea in abatement becomes necessary only
where the particular defect is not apparent on the face of the
record. (*Post, pp.* 353, 354.)

Code cited and construed: Sec. 5236 (S.); sec. 4217 (M. & V.);
sec. 3476 (T. & S. and 1858).

Cases cited and approved: Parker v. Porter, 4 Yerg., 81; Bank v.
Fitzpatrick, 4 Humph., 311; Bennett v. Avant, 2 Sneed, 152.

2. **SAME. Motion to quash, for apparent defects operates as
special appearance only, and not as a general appearance.**

A motion to quash an attachment for apparent defects made for
the purpose of challenging the jurisdiction of the court operates
as a special appearance, and not as a  general  appearance.
(*Post, pp.* 354, 355.)

Case cited and approved: Lumber Co. v. Lieberman, 106 Tenn.,
153.

3. **SAME. Same. Motion to quash, for failure of affidavit to
aver removal of property from the State of the common resi-
dence of the parties to be fraudulent.**

In a suit by original attachment instituted in our courts by a
nonresident against a nonresident, both parties being residents
of the same State, to recover damages for a wrongful death, a
motion to dismiss or quash the attachment, on the ground that
the affidavit therefor did not aver that defendant's property
had been fraudulently removed to this State to evade the pro-

Bryan v. Railroad.

cess of law in the State of their common residence, does not operate as an appearance. (*Post, pp.* 352, 353, 354.)

4. **SAME.** Filing petition to remove cause to federal court, and withdrawing same does not operate as a general appearance.

The defendant, having the acknowledged right to make a special appearance for the purpose of filing a petition for the removal of the cause to the federal court, might properly appear and withdraw that petition without being charged with a general appearance. (*Post, p.* 356.)

Cases cited and approved: Freidlander v. Pollock, 5 Cold., 491; Railroad v. Brow, 164 U. S., 271.

5. **SAME.** Quashing original attachment operates as dismissal of suit.

There is no error in dismissing a suit by original attachment if the attachment is properly quashed, because the effect of quashing the original attachment is to deprive the court of any jurisdiction over the person of the defendant, the inevitable consequence of which is the dismissal of the suit. (*Post, pp.* 356, 357.)

Case cited and approved: Harris v. Taylor, 3 Sneed, 539.

6. **SAME.** Quashing ancillary attachment does not operate as dismissal of suit.

The rule in the last headnote is not applicable in the case of an ancillary attachment, for the reason that such attachment is not the leading process; it does not bring the defendant into court; its only office is to hold the property attached under it for the satisfaction of the plaintiff's demand, and quashing the same does not abate the suit. (*Post, pp.* 356, 357.)

Cases cited and approved: Robb v. Parker, 4 Heisk., 59; Templeton v. Mason, 107 Tenn., 631.

7. **APPEAL.** Review of error involving jurisdiction without assignment of error, when.

Though errors may not be assigned in the supreme court by the successful party, the court, of its motion, will review a question arising on the jurisdiction of the trial court. (*Post, pp.* 357, 358.)

Bryan v. Railroad.

8. **ATTACHMENT.** One suing for a tort is a creditor in sense of statute allowing attachment by a nonresident against a non-resident, when.

The statute (Shannon's Code, section 5212), requiring as a pre-requisite to an attachment that a nonresident creditor shall swear that the nonresident debtor's property has been fraudu-lently removed from the State of their common domicile or resi-dence to this State to evade the process of law in their State, embraces and comprehends actions by nonresidents who are seeking to impound property in this State for the satisfaction of damages claimed for a tort, and the omission of an averment in the affidavit that the property sought to be attached was re-moved to this State to evade the process of the law in the State of their domicile is fatal to the validity of the attachment. (*Post, pp.* 352, 353, 358-363.)

Code cited and construed: Secs. 3143, 5211, 5212 (S.); secs. 2424, 4192, 4193 (M. & V.); secs. 1759, 3455 (T. & S. and 1858.); sec. 3455a (T. & S.).

Acts cited and construed: Acts 1715, ch. 48, sec. 9; Acts 1801, ch. 25, sec. 2; Acts 1870-71, ch. 122.

Cases cited and approved: Williams v. Conrad, 11 Humph., 412, 418; Patrick v. Ford, and Farnsworth v. Bell, 5 Sneed, 532; Vance v. Smith, 2 Heisk, 343, 350; Merchant v. Preston, 1 Lea, 284; Parker v. Savage, 6 Lea, 408; Taylor v. Badoux, 92 Tenn., 251; Sanders v. Logue, 84 Tenn., 364.

Case cited and disapproved: Langford v. Fly, 7 Humph., 585.

---

FROM SULLIVAN.

---

Appeal in error from the Circuit Court of Sullivan County.—A. J. TYLER, Judge.

HARR & BURROW, for Bryan.

PAGE & FULKERSON and ST. JOHN & SHELTON, for
Railroad.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

This is a suit by original attachment to recover dam-
ages for the alleged unlawful killing of one Harry Lee
Patton, who was employed by the defendant company
in the capacity of brakeman and lost his life in a collis-
ion near Hull, in the State of Virginia.   The suit was
brought by the administrator of the deceased, and a writ
of attachment was levied on four passenger coaches be-
longing to the defendant company and impounded in the
town of Bristol, Tennessee.   It appears from the record
that both the plaintiff and defendant are residents of
the State of Virginia, and it does not appear that the
deceased ever resided in the State of Tennessee, or left
any assets in this State.   It appears that on the 25th of
April, 1906, during the vacation of the court, a petition
was filed on behalf of the Norfolk & Western Railway
Company to remove the cause to the United States court.
Prior to any action on the petition, it was voluntarily
withdrawn by the defendant company.   When the regu-
lar term of the court was convened on the third Monday
in May, 1906, a motion was interposed on behalf of the
railroad company to dismiss the attachment, on the

ground that the affidavit therefor did not aver that the property of the defendant in Tennessee had been fraudulently removed to this State to evade the process of law in the State of Virginia. This motion was overruled by the trial judge. It appears that on the 24th of May, 1906, another motion was made on behalf of the railroad company to quash the original attachment herein for the following reasons: (1) The affidavit is insufficient, in that it does not state that Henry Lee Patton, for whom J. H. Bryan sues as administrator, either died in the State of Tennessee or left assets or property in this State, and therefore has no right to prosecute a suit on the pauper's oath. (2) Because an original attachment for a tort cannot be issued upon the pauper oath. The trial judge sustained both grounds of the motion, quashed the attachment, and dismissed the plaintiff's suit.

The first assignment of error is that the court erred in dismissing the plaintiff's suit, because the motion was only to quash the attachment. It is insisted that, if the attachment was properly quashed, it did not necessarily follow that the whole suit should be dismissed on that account.

The contention on behalf of the plaintiff in error is that the defendant company had entered its appearance before the motion to quash the attachment was made, and that the quashing of the attachment was a mere incident of the suit, and did not touch the merits of the

controversy. The position of the plaintiff in error is that, when the motion was made on behalf of the company to dismiss the attachment because the affidavit did not aver that the property of the company in Tennessee had been fraudulently removed to this State to evade the process of law in the State of Virginia, the company thereby entered its appearance in this suit, and more especially when it afterwards appeared and asked leave to withdraw the petition.

We are of opinion this contention is not sound. The fact that a motion to dismiss was made, and not a plea in abatement filed, would not affect this question. When a defect appears on the face of the attachment, it is not necessary that the legal question should be raised by a plea in abatement; but in such a case the proper practice is a motion to quash. The plea in abatement becomes necessary only where the particular defect is not apparent on the face of the record. Shannon's Code, section 5236, note 1; *Bennett* v. *Avant,* 2 Sneed, 152; *Parker* v. *Porter,* 4 Yerg., 81; *Bank* v. *Fitzpatrick,* 4 Humph., 311.

It is very obvious that both motions on behalf of the defendant company to quash the attachment were made for the purpose of challenging the jurisdiction of the court, and the appearance of the company was only special, and not a general, appearance.

In *Lumber Co.* v. *Lieberman,* 106 Tenn., 153, 61 S. W., 70, it appears that an order *pro confesso* had been taken against the defendants, which, on their motion, was set

aside by the chancellor, and the defendants allowed to file a plea in abatement. There was a motion to strike out the plea, because (1) defendants had permitted a *pro confesso* to be taken and thereby submitted to the jurisdiction of the court; (2) they had entered their appearance to make the motion and thereby submitted to the jurisdiction, etc. The court held that entry of appearance was simply for the purpose of contesting the jurisdiction, and not for trial on its merits, and was not a submission to the jurisdiction.

In *Friedlander* v. *Pollock*, 5 Cold., 491, it was held that an application to remove a cause to the federal court was not such an appearance as would debar the defendant the right of putting in issue the ground of the attachment.

So in *Wabash Western Railway* v. *Brow*, 164 U. S., 271, 17 Sup. Ct., 126, 41 L. Ed., 431, it was held that the filing of a petition for removal does not amount to a general appearance, but to a special appearance only.

Again, it is insisted that, when counsel appeared for the defendant and moved for leave to withdraw the petition for removal, that act amounted to a general appearance. It is said the defendant, in filing its petition for removal, was pursuing the federal statute, and it is practically conceded that this appearance for that purpose was special; but it is said the defendant, before the petition had been acted on, again appeared in court by attorney and withdrew it. It is argued this was not

done in pursuance of any federal statute, but was a voluntary abandonment of a right under that statute, and amounted to a voluntary appearance. We do not think this contention sound. The defendant company, having the acknowledged right to make a special appearance for the purpose of filing a petition for the removal of the cause to the federal court, might properly appear and withdraw that petition without being charged with a general appearance. It was at last an appearance for a special purpose, whether for the filing of the petition for removal in the first instance or the withdrawal of that petition in the last instance.

There was no error in dismissing the plaintiff's suit, if the original attachment was properly quashed. The nature of the original attachment is thus explained in *Harris* v. *Taylor*, 3 Sneed, 539, 67 Am. Dec., 576, as follows:

"In the present situation of the law, the attachment is a proceeding, not only to enforce the appearance of the defendant, but to obtain security for the plaintiff's demand. For the purpose of bringing the defendant into court, it is substituted for ordinary writ or summons and the seizure of the defendant's property by attachment stands in place of personal service, so far as to give jurisdiction to the court to proceed to render judgment in the case. Being the leading process by which it is sought to compel an appearance, the defendant, upon appearing, may plead in abatement, as if brought into court upon ordinary process. He may traverse and disprove the truth of the cause stated as the ground of at-

Bryan v. Railroad.

tachment. And, as it is alone by seizure of his property that the court can acquire jurisdiction of his person, he may show in abatement of the attachment, . . . and therefore that he is not before the court."

The effect, therefore, of quashing the original attachment, is to deprive the court of any jurisdiction over the person of the defendant, and thus the inevitable consequence is the dismissal of the suit. This is not so as to an ancillary attachment, for the reason that in such cases the attachment is not the leading process, and quashing the attachment does not abate the suit. *Robb* v. *Parker,* 4 Heisk., 59.

At law an ancillary attachment is sued out in aid of a suit already brought. Its only office is to hold the property attached under it for the satisfaction of the plaintiff's demand. It does not bring the parties into court. *Templeton* v. *Mason,* 107 Tenn., 631, 65 S. W., 25.

The next question arising is whether the original attachment herein was properly quashed.

In our opinion the trial judge was in error in not sustaining the first motion submitted on behalf of the defendant company. The cause assigned was that the affidavit for the attachment failed to aver that the property of the company in Tennessee had been fraudulently removed to this State to evade the process of law in the State of Virginia. This is a jurisdictional question, and, although errors may not be assigned in this court by the successful party, this court, of its own motion, will re-

view a question arising on the jurisdiction of the trial court. It is provided by section 5212 of Shannon's Code as follows:

"When the debtor and creditor are both non-residents of this State and residents of the same State, the creditor shall not have attachment against the property of his debtor, unless he swear that the property of the debtor has been fraudulently removed to this State to evade the process of law in the State of their domicile or residence."

As already seen, the affidavit upon which this attachment was sworn out wholly omitted this jurisdictional averment. It is said, however, on behalf of the plaintiff, that this statute is inapplicable in the present case, for the reason that it applies alone to an attachment by a creditor against a debtor, and does not embrace an action of tort to recover damages for personal injuries. What, then, is meant by the terms "creditor" and "debtor," as employed in section 5212 of Shannon's Code? We have several cases in which the term "creditor," as used in the statute against fraudulent conveyances (section 3143, Shannon's Code), has been defined.

In *Langford* v. *Fly,* 7 Humph., 585, it was held that a party who has a right of action for a tort, as for slander, "cannot be deemed a creditor within the meaning of Acts 1801, c. 25, section 2, until he obtains a judgment, etc. The wrongdoer is in no sense a debtor by reason of the wrong until the judgment of the court shall fix upon him a pecuniary burden for the redress of the wrong."

The above case was modified by a subsequent ruling in the case of *Patrick, Adm'r, v. Ford et al.,* cited in note to *Farnsworth* v. *Bell,* 5 Sneed, 532. In that case it was held (1) that a conveyance of property to defeat an expected recovery in an action of tort is fraudulent and void, as well at common law as under the statute of frauds of 1801 (Acts 1801, c. 25, section 2); (2) the term "creditor," as used in Acts 1801, c. 25, section 2, embraces every person having a just demand or right recognized by law to claim a recovery for an injury to person or property. In the course of the opinion Judge McKinney said:

"The practical importance of this question requires, perhaps, that the construction of the statute construed in the case of *Langford* v. *Fly,* supra, as respects the meaning of the term 'creditor,' should be further considered. The statute declares in substance that every conveyance of lands or goods made 'to the intent or purpose to delay, hinder or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties or forfeitures,' shall be utterly void. Now the question is, in what sense is the term 'creditor' to be understood in this connection. Is it to be taken in the limited and technical sense of a person to whom 'a sum of money is due by certain and express agreement'? 3 Bla. Com., 154. Or is it to be understood in a more enlarged and less technical sense, so as to embrace every just demand or right recognized by law to claim a recovery for an injury to person or property? In the con-

struction of a statute one of the cardinal rules is that
the words used shall, if possible, be so understood as
that meaning and effect shall be given to every word;
not so much regarding the propriety of language, as the
obvious sense in which the words were intended to be un-
derstood. If the word 'creditor' is to be restricted, so as
only to include debts *eo nomine* and *in numero*, then the
word 'damages' is rendered inoperative, as it would
seem; there being nothing left, upon that construction,.
for it to act upon. . . . The term 'creditor,' in Acts
1715, c. 48, section 9, was taken in a much more compre-
hensive sense than it technically imports, in order to
comply with the spirit and policy of the act. *Williams*
v. *Conrad,* 11 Humph., 412, 418. In our view, a convey-
ance made with intent to defeat a recovery in damages.
for a breach of contract, or for a tortious act to person or
property, is as much in contravention of the statute,.
and equally void, as if the purpose of the deed were to
defeat the recovery of a debt in the proper sense of the
term. This construction has the advantage of giving ef-
fect to all the words of the act, and of carrying out the
obvious intentions and policy of the law."

In *Sanders* v. *Logue,* 84 Tenn., 364, 12 S. W., 722, it
was said as follows:

"It is true, as we have already seen, that a plaintiff
in an action of tort commenced is a creditor, within the
meaning of our statute prohibiting conveyances with
fraudulent intent to defeat creditors (5 Sneed, 532), and
so of one in that relation that he is secured in a deed of

trust which includes 'all creditors' (*Vance* v. *Smith*, 2 Heisk., 343, 350). But, even in respect to such creditor, after suit brought, it is held that his claim is not a debt within the meaning of our constitution prohibiting impairment of validity of debts," etc. *Parker* v. *Savage*, 6 Lea, 408,

Acts 1870-71, p. 139, c. 122 (Shannon's Code, section 5212), is an amendment to the general attachment laws found at section 5211 et seq., Shannon's Code. The first section of that act provides that "any person having a debt or demand due at the commencement of an action, or having a claim for damages for a tort, may sue out an attachment at law or in equity," etc.

It is insisted that when the original act was amended, so as to permit nonresidents of this State to avail themselves of our attachment laws, provided the property of the debtor had been fraudulently removed to this State, etc., the amendment was limited to the debtor and creditor class in the strict and technical meaning of those terms. The argument is that, the amendment having been confined to the debtor and creditor class, nonresidents having a claim for damages for a tort are excluded. We do not concur in this construction of the statute. We are not able to perceive any good reason why the legislature, in extending the remedy afforded by our attachment laws, should limit the right to nonresidents who are creditors and debtors in the narrowest meaning of that term, when, as already seen, the original act provides for persons having a claim for damages

for a tort. We are of opinion that these terms, employed in the amendment, are to be read in the light of the original act, and are to be interpreted in their more enlarged and comprehensive signification, and as including nonresidents who are seeking redress in damages for a tort.

In *Merchant* v. *Preston,* 1 Lea, 284, it was said by this court, in considering section 5212, Shannon's Code, that:

"Looking to the reason and policy of this act, it was intended to be amendatory to the whole of section 3455 (Shannon's Code, section 5211)."

This language was not used by Judge McFarland in connection with the precise question we are now considering, but generally in respect of the breadth and scope of the amendment.

So in the case of *Taylor* v. *Badoux,* 92 Tenn., 251, 21 S. W., 522, this section of the Code (Shannon's Code, section 5212) was again under consideration, wherein Judge Snodgrass used this language:

"The act of 1871 regulated only the general practice as to attachments at law or in equity, and permitted them in all cases where property had been fraudulently removed to this State from that of the residence of the parties to evade the process of law in the State of their domicile or residence. . . . It is generally allowed on all claims and in all courts."

Again we remark the last case cited did not adjudicate the precise point arising on the present record, but is

Bryan v. Railroad.

cited for the purpose of showing how broad the court considered the act.

Without further elaboration, we are content to hold that the act in question was intended to embrace and does comprehend actions by nonresidents who are seeking to impound property in this State for the satisfaction of damages claimed for a tort, and that the omission of an averment in the affidavit that the property sought to be attached was removed to this State to evade the process of the law in the State of their domicile was fatal to the validity of the attachment.

For this reason, and without noticing other questions, the judgment is affirmed.