T. E. B. Siler *v.* N. B. Perkins *et al.*[*]

(*Knoxville.* September Term, 1912.)

1. **PRINCIPAL AND AGENT.** Personal liability of agent of undisclosed principal for services rendered by an employed agent.

Where the defendants, owning a part of the stock of a corporation, employed the complainant to procure a purchaser for all the stock therein, without disclosing to him the other owners, except that "a man in Ohio" owned some of the stock, which was not a disclosure of their such principal, and it does not appear who the other owners were, if any, but it does appear that the defendants were assuming to act for all the owners, and that, pursuant to the negotiations conducted by the complainant, they sold and delivered the entire capital stock of the corporation, the defendants are personally liable to the complainant for compensation for his such services. (*Post, pp. 385, 386.*)

2. **SAME.** Agent contracting for a disclosed principal does not bind himself personally, unless there is a disclosed intention so to bind himself.

While it is generally true that an agent who, acting within the scope of his authority, enters into contractual relations for a disclosed principal, does not bind himself, in the absence of an express agreement to do so, yet it is also true that whether such agent does, by such transaction, bind himself depends on the intention of the parties, which must be gathered from the facts and circumstances of each particular case; and it is the disclosed intention, and not some hidden intention of the agent, that governs; and· hence an agent may become

---

[*]As to right of real estate broker who acts for both parties, to commissions, see note in 24 L. R. A. (N. S.), 659.

As to effect upon the right to commission, of the fact that owner sells to broker's customer at reduced price, see note in 34 L. R. A. (N. S.), 1050.

Siler v. Perkins.

personally liable, although contrary to his actual intention, if he has bound himself by the terms of the contract. (*Post, pp.* 386, 387.)

3. SAME. Agent contracting in his own name without disclosing his principal is personally liable, though it is known that he is agent, when.

An agent who makes a contract in his own name, without disclosing the name of his principal, renders himself personally liable, even though the person with whom he deals knows that he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties that the agent should not be bound. (*Post, p.* 387.)

Case cited and approved:  Davis v. McKinney, 6 Cold., 17.

4. SAME. Contract with a known agent for a known principal is the principal's contract, and the agent is not personally liable, when.

Where a third person contracts with an agent, knowing that he is an agent, and also with knowledge of the principal for whom the contract is made, the contract, if within the scope of the powers of the agent, is in law the contract of the principal, and the agent is not bound, unless, in making the contract, the third party gave credit expressly and exclusively to the agent, and it was clearly the intention of the agent to become personally liable. (*Post, pp.* 387, 388.)

Case cited and approved:  Bailey v. Galbreath, 100 Tenn., 602.

5. ATTACHMENT. Agents and trustees, giving bond for release of impounded property held for their principals, cannot escape liability, because not personally liable on contract sued on.

Where the defendants, owning part of the stock of a corporation, employed the complainant to procure a purchaser for all the stock, and the complainant, having procured such purchaser, sued the defendants as individuals, and also as agents and trustees of all the shareholders, for his compensation, and by injunction and attachment writs impounded a part of the purchase money indebtedness secured by a deposit of the

stock as collateral, whereupon the defendants, to discharge
these writs, executed their individual bond to pay any re-
covery which complainant might obtain, it was *held* that the
defendants, having procured the release of the fruits of the
complainant's labor, which they held as agents and trustees
for all the stockholders, could not be heard to say that they
were not personally liable, and that the suit should be against
their principal. (*Post, pp.* 388, 389.)

6. **SAME. Same. Decree need not show ground of personal lia-
bility of agents in such case, when.**

Under the circumstances disclosed in the preceding headnote,
it was not necessary for the decree to show whether the de-
fendants were held liable individually, as agents dealing for
an undisclosed principal, or as agents and trustees having all
of the capital stock within their possession and control, with
full power to act in the premises, and as having contracted
for and obtained the services of the complainant to effectuate
a sale thereof. (*Post, pp.* 389, 390.)

7. **BROKERS. Compensation for bringing parties together where
they consummate trade, with changes, in absence of broker,
when.**

Where, as a result of a broker's efforts, the parties were brought
together and a sale was effected, he was entitled to com-
pensation, although some changes were made in the details
of the trade, and although he was not present at the actual
consummation of the trade and delivery of the property,
where he was told by one of his principals that there was
nothing further he could do in the premises. (*Post, pp.* 390, 391.)

Cases cited and approved: Parker v. Walker, 86 Tenn., 567;
Gilchrist v. Clark, 86 Tenn., 583; Cheatham v. Yarbrough, 90
Tenn., 77; Woodall v. Foster, 91 Tenn., 195.

8. **SAME. Accepting employment from adverse party, without
consent, forfeits compensation, when; but this case does not
fall within the rule.**

Siler v. Perkins.

Where a broker, employed to effect a sale, without the full knowledge and consent of his principal, accepts employment from the parties to whom the sale is made, to act for them in the same matter, he is not entitled to recover compensation from his original principal, if the defense is relied on. However, in this case, no such inconsistent employment was accepted.  (*Post, pp.* 391, 392.)

Cases cited and approved: Perkins v. McGavock, 3 Hay., 265; Hadley v. Latimer, 3 Yerg., 537; Coffee v. Ruffin, 4 Cold., 487; Moinett v. Days, 1 Bax., 431; Tynes v. Grimstead, 1 Tenn. Chy., 508; Raht v. Mining Co., 5 Lea, 1.

9. **SAME.  Does not forfeit compensation by effort to add that much to price, by authority of principal, when.**

Where a seller, in order to delude a purchaser as to the amount of commissions included in the price of property offered for sale, authorized the broker, by a letter to be shown to the purchaser, to deal with the purchaser for additional sum as his compensation, the broker's showing of such letter to the purchaser was not such bad faith on his part as precluded him from recovering compensation from the seller, nor were other small matters not prejudicially affecting the interest of the defendants, especially where complainant was never in any respect disloyal to their interests.  (*Post, pp.* 392, 393.)

---

## FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— WILL D. WRIGHT, Chancellor.

SHIELDS, CATES & MOUNTCASTLE, for complainant.

LINDSAY, YOUNG & DONALDSON, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The complainant, Siler, a duly licensed real estate agent, sought by his bill a money decree against N. B. Perkins and A. Gatliff, as individuals and as trustees of the stockholders of the Westbourn Coal Company, a Tennessee corporation. His bill was double in scope— in one aspect, based on express contract; in the other, upon contract implied and the *quantum meruit.* His purpose in either phase of the bill was to recover compensation for his services rendered, as a real estate agent, in effecting the sale of all the capital stock of the corporation above named which amounted to 650 shares of the par value of $100 per share; the purchase price at which the same passed from vendor to vendee in the transaction being the sum of $225,000, a large portion of which was cash, with notes given to secure the deferred payments, secured by deposit of the shares as collateral.

The defendants being nonresidents, injunction and attachment writs issued, and the capital stock and indebtedness on the deferred payments, sufficient in amount to satisfy the demands of the bill, were by these means impounded, which resulted in the giving of a bond by defendants to discharge the writs and to satisfy such decree as might be rendered. Defendants answered, denying any indebtedness to complainant, but admitting that they had made the sale of stock alleged in the bill. Only three depositions were taken on behalf of complainant. One of these was that of complainant, cover-

ing each of the phases of the bill.   The other depositions taken by him were of two real estate agents of Knoxville, each of which depositions was addressed to the *quantum meruit* feature of the bill.   On behalf of defendants, the deposition of each of them was taken; but neither of them was read on the hearing, nor does either of them appear in the record before us.   The fact that they were taken and not read appears in the final decree.

By this decree, a recovery and execution thereon was awarded complainant against defendants, and the sureties on their bond aforesaid for the sum of $3000 principal, and interest thereon from January 20, 1909, making an aggregate sum of $3,450, together with the costs of the cause.   From this decree, defendants appealed, and have assigned errors in this court.   These are five as numbered in the brief; but they raise, in fact, only three questions.

First.   It is said the proof shows that, as to part of the stock sold, defendants Perkins and Gatliff were not owners, but agents merely, and of what proportion of the stock they were owners does not appear, but that complainant knew that they were acting as agents only in respect of part of the stock, and to sustain this insistence they quote one of complainant's answers to this effect: "I have always understood that Dr. Gatliff and Mr. Perkins and a man in Ohio were the principal and largest owners of the stock."   And upon this evidence is based the argument that defendants Perkins and Gatliff were acting as agents for a disclosed principal, and that their contract to pay complainant a commission for

126 Tenn. 25

the sale of the stock did not bind the agents personally. The first answer to this contention is that the record does not show that defendants Perkins and Gatliff ever disclosed to complainant who their principals were in respect to that portion of the stock of which they were not themselves the owners; nor does it appear that they ever disclosed to him how much of the stock they owned individually, but it does clearly appear that the defendants were assuming, in the making of the contract sued on, to be acting for the holders of shares of the entire capital stock in the corporation, and that they did sell and deliver, pursuant to negotiations conducted by complainant under the contract sued on, all of that capital stock. It is clear that complainant, under the terms of his contract with them, was made to understand that they and each of them personally were bound to him for the commissions which it was agreed that he should receive; that being the principal sum of the chancellor's decree.

The second answer to the first assignment of errors is that while it is true as a general rule that in law "an agent who, acting within the scope of his authority, enters into contractual relations for a disclosed principal, does not bind himself, in the absence of an express agreement to do so," yet it is also true that whether such an agent does by such a transaction bind himself depends on the intention of the agent and the person dealing with him, and this intention must be gathered from the facts and circumstances of each particular case. And it is the disclosed intention that governs, and

not some hidden intention of the agent; and so the agent may become personally liable, although this be contrary to his actual intention, if he has in fact bound himself according to the terms of the contract. And an agent who makes a contract in his own name, without disclosing the identity of his principal, renders himself personally liable, even though the person with whom he deals knows that he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties to the contract that the agent should not be bound. Cyc., vol. 31, pp. 1552 to 1555, inclusive, and Page on Contracts, sec. 975, vol. 2.

"When a purchase is made by an agent, in the name and on the credit of the agent, for a principal not disclosed to the seller, the latter may, upon discovering the principal, treat the sale as a contract with the principal, and hold him responsible for the price. The seller may have his action for the price, at his election, against the agent or against the principal; and this, though the seller at the time supposed the agent to make the purchase for himself, as principal. In such case, the contract, though apparently and in form with the agent as principal is in fact for the benefit of the principal, and in the performance of the agency, and is the contract of the principal. The law regards the reality rather than the form." *Davis* v. *McKinney,* 6 Cold., 17.

But as a matter of course, when a third person contracts with an agent with knowledge of that fact, and also with knowledge of the principal for whom the con-

tract is made, then the contract, if it be within the scope of the powers of the agent, is in law the contract of the principal, and on such a contract the agent is not bound unless in making the contract the third party gave credit expressly and exclusively to the agent, and it was clearly the intention of the agent to become liable in person. *Bailey* v. *Galbreath Bros.*, 100 Tenn., 602, 47 S. W., 84.

Under these legal principles we think it clear that when these defendants, without disclosing to complainant the names of the holders of the stock, assumed to represent the holders of all the stock, only giving to complainant the knowledge that one man in Ohio. and themselves were the principal owners of the stock, it cannot be said that these defendants disclosed the names of their principals to complainant; and when, under these facts, they, for themselves and their associate stockholders, accepted the benefits of the services of complainant in finding for them a purchaser for the entire capital stock under a contract, express or one arising by implication of law out of the dealings between them and complainant, they cannot defeat his recovery of just compensation for making the sale or finding the purchaser who took all the stock at a price agreeable to all the stockholders, by invoking the defense that complainant's contract for compensation was not with them, but with their principals. Who were their principals? The record gives no answer. Their answer to complainant's bill does not disclose, and, if their depositions did disclose this fact, they were not read on the trial. So that, so far as the record shows, neither in their negotiations with complainant nor in the con-

duct of the cause have they disclosed whom they acted for when they contracted for and accepted the benefits of complainant's services. Moreover, they were sued, in this case, not only as individuals, but also as agents and trustees of all of the shareholders of the corporation, and the fruits of the sale which had been brought about by complainant's labors, to wit:

A part of the purchase-money indebtedness secured by a deposit of the stock as collateral was impounded by the injunction and attachment writs, and to discharge these writs the defendant, Perkins and Gatliff, executed an individual bond to pay any recovery which complainant might obtain in this cause, and by means of this bond they freed from the grasp of complainant the fruits of his labors, which they had held as agents and trustees for all the stockholders. Therefore, they will not be heard to say that they are not personally liable for the decree in this case. The final decree, following the theory of the assumption by complainants of any liability which might be disclosed under the bill of complaint, ran against Perkins and Gatliff as individuals and against their individual sureties on the bond aforesaid. The same theory of the individual liability of defendants is followed in the execution by them of the appeal bond, by which they bring the decree of the chancellor to this court for review. That decree in general terms adjudges complainant to be entitled to the relief sought, whether upon the express contract or the implied contract averred in the bill. It does not show, nor did it show whether, in the opinion of the chancellor, they

were held liable individually as agents dealing for an undisclosed principal, or as agents and trustees, who, having all of the capital stock of the corporation within their possession and control, with full power to act in the premises, had contracted for and obtained the services of the complainant to effectuate a sale thereof. After the execution of the bond discharging the injunction and attachment, it was not essential that the decree should be more specific. What we have said disposes of the first question.

It is next said that "the chancellor erred in holding and decreeing that the complainant carried out his contract, so as to entitle him to recover his alleged commission." The record clearly discloses without dispute that complainant, under a contract so to do, did procure a purchaser who was acceptable to his principals, and who was ready, able, and willing to buy on the terms to which the principals had agreed, and that the sale was actually closed, and the principals had in their possession the fruits thereof, before this suit was brought. The record does show that, after the agent had brought the parties together, some changes were made in the details of the trade, and that the agent was not present at the actual consummation of the trade and delivery of the property. But this all occurred after he had asked one of the defendants if there was anything further he (complainant) could do in the premises and had been assured to the contrary. It is clear that the sale was the result of the labors of this agent in bringing the parties together, and that his labors were by no

means inconsiderable, but entirely capable and efficient. *Woodall* v. *Foster,* 91 Tenn., 195, 18 S. W., 241; *Cheatham* v. *Yarbrough,* 90 Tenn., 77, 15 S. W., 1076; *Gilchrist* v. *Clark,* 86 Tenn., 583, 8 S. W., 572; *Parker* v. *Walker,* 86 Tenn., 567, 8 S. W., 391.

It is next said that complainant accepted from the parties to whom the sale was made an employment to act for them in the same matter, and therefore that his contract with defendants and right to recover under it ceased.

"In general, an agent may, with their full knowledge and consent, represent both parties to a contract, and his contracts, under these circumstances, bind each within the scope of his authority. But where an agent, without the full knowledge and consent of his principal, represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of the principal. The payment of a bribe, secret commission, or gratuity to the agent by a third party as an inducement for entering into contractual relations on behalf of his principal, or an agreement to pay such commission, will entitle the principal to avoid the contract." Cyc., vol. 31, pp. 1572, 1573. And on the same subject, see *Moinett* v. *Days,* 1 Baxt., 431; *Tynes* v. *Grimstcad,* 1 Tenn. Ch., 508; *Perkins* v. *McGavock,* 3 Hayw., 265; *Hadley* v. *Latimer,* 3 Yerg., 537; *Coffee* v. *Ruffin,* 4 Cold., 487; *Raht* v. *Union Consolidated Mining Co.,* 5 Lea, 1.

There is no doubt about the general rule of law urged in support of this assignment, nor question of the sound-

ness of the authorities to which we are referred. But the facts of record do not support the facts stated in the assignment. So this case does not fall within the rule invoked. A careful reading of the record satisfies us that there was no secret, collusive or fraudulent dealings or employment between complainant and the purchasers.

The sum and substance of the whole business was that in shaping up the proposition to be submitted to the proposed purchasers and lest they might be deterred from buying by the fear that the price was loaded with a heavy commission for the complainant as agent, it was agreed that defendants, or one of them, should write complainant a letter stating, in substance, that he might add to the price demanded by defendants the sum of $1000. This letter it was intended that complainant should show to the purchasers, and this letter was written by one of these defendants, and was by complainant shown to the purchasers who made no objection to the arrangement, but never paid the $1000 to complainant. If there was collusion or fraud in this, it was leveled at the proposed purchasers, and defendants were *particeps criminis*. No harm ever came of it to defendants. The defendants, after taking advantage of the scheme to delude the purchasers as to the amount of commission carried in the purchase price, now seek to use it to defeat their obligations to complainant. It is also said under this assignment that complainant did not secure as much money for the property as the original price fixed by defendants, and from this fact

it is argued that he was working in the interest of the purchasers. The conclusion by no means follows, and, beside, is wholly overthrown by complainant's proof. It is also said the purchasers at one time offered to pay complainant's expenses from Atlanta to Williamsburg, Ky., on condition that he would convey a proposition to defendants at a much lower figure for the property than the purchasers were willing to give. Complainant testifies that such an offer was made, and that he carried it to defendants, but advised them not to accept it and told them that the purchasers would pay the higher sum at which the property was finally sold. He also testified that he had never received or demanded of the purchasers payment of the expenses of the trip. If the complainant was ever in any respect disloyal to the interests of defendants, the fact fails to appear in this record.

From what has been said, it follows that the decree of the chancellor must be affirmed, with costs.