## H. A. GILBERT v. D. D. SMITH.

Eastern Section. March 19, 1932.

Petition for Certiorari denied by Supreme Court, July 2, 1932.

W. T. Murray and Fletcher & Bernhardt, of Chattanooga, for appellant, Smith.

Thomas, Thomas & Coffey, of Chattanooga, for appellee, Gilbert.

CROWNOVER, J.   This was a suit to collect a real estate agent's commission on an exchange of real estate.

The original bill alleged that complainant was a licensed real estate agent; that defendant Smith employed him to sell or exchange his farm in Rhea County; that complainant found one T. J. Stone who owned valuable timber lands which he wished to sell or exchange; that complainant introduced the parties and took each to see the other's property, and entered into a contract with each that if the exchange should be made each would pay him a commission of $1500; that the exchange was made and complainant earned his $1500 to be paid by Smith, which is due and unpaid; that he has demanded same but defendant has refused to pay it.

Defendant answered and denied that. he employed Gilbert to sell his farm; and alleged that Gilbert was the agent of T. J. Stone, the owner of some timber, and as such agent undertook to make an exchange of said timber for defendant's farm; that at a later date defendant and Stone entered into a trade of said properties without the assistance of Gilbert.

After the taking of proof complainant filed an amended and supplemental bill, alleging that Smith was a non-resident of the State of Tennessee; that the Williams & Voris Lumber Co., of Hamilton County, Tennessee, was indebted to Smith; that Smith owed complainant $1500; and prayed for an attachment by garnishment of said Williams & Voris Lumber Co.'s account. Attachment was issued and garnishment served on Williams & Voris Lumber Co.

Williams & Voris Lumber Co. answered that they were not indebted to Smith. S. A. Williams, President of Williams & Voris Lumber Co., answered, stating that his Company was not indebted to Smith, but explained that it had entered into a written contract with defendant Smith for said timber and had advanced $10,000 to defendant Smith to enable him to pay off certain lien indebtedness on said timber and that he might cut and deliver said timber to said Company at prices set out in the contract, to be credited on said advancement until the Company was paid.

Defendant Smith filed a plea in abatement to the attachment, denying that he was a non-resident of the State of Tennessee and a resident of the State of Georgia.

Complainant filed exceptions to the answer of the Lumber Company.

Defendant D. D. Smith moved for leave to give bond in lieu of the attachment and garnishment, which was allowed, and a bond for $3000 was filed and the garnishee dismissed and released and the attachment discharged.

Issue was joined on the plea in abatement and a motion to strike joinder of issues on the plea was overruled.

Pro confesso was taken against Smith under the amended and supplemental bill.

Smith moved to strike and dismiss the amended and supplemental bill on the ground that same was filed without leave of the court first had and obtained, which was overruled by the court, for the reasons that Smith had waived this irregularity by filing the plea in abatement and by executing bond and having attachment dismissed.

The Chancellor found that Smith and Stone were not acquainted with each other and neither knew about the property of the other until Gilbert had introduced them and had taken each to see the property owned by the other, and that the trade or exchange of properties was the direct result of the activities of Gilbert; but that they had later dropped Gilbert and agreed upon an exchange on different terms; that there was no express contract on Smith's part to pay him $1500; that Gilbert was entitled to a commission on an implied promise; that defendant's claim that Gilbert agreed to look to Stone alone for his commission was not sustained by the weight of the proof, but defendant had admitted that he agreed to pay Gilbert "what was right"; that there being no express contract for a definite sum as commission complainant is entitled to a commission based upon the fair market value of the property; that the proof showed a custom to divide commissions equally between the parties where an exchange was made, which was adopted by the court; that the property exchanged for which commission is sought to be collected was an 800 acre farm in Rhea County, mortgaged for $13,000, which mortgage was assumed by Stone; that Stone conveyed to Smith a one-half interest in the timber upon a tract of land in Georgia, upon which there was a mortgage which Smith assumed. The Chancellor ordered a reference to the Master to report, first, the fair cash market value in September, 1928, of the one-half interest in the Georgia timber, less one-half of the incumbrance upon the whole timber tract, to which should be added the incumbrance on the Rhea County farm, in September, 1928, assumed by Stone. Second, the customary commission under such circumstances, and if no custom then the reasonable compensation.

The Master reported that the encumbrance on said timber tract was $4000; that the value of one-half of the timber less one-half of the encumbrance was $5500; that this amount added to the amount of the mortgage on the Smith farm, $13,000, would make $18,500, the valuation of the property received by Smith in this trade or exchange; that the customary percentage on such transactions is seven and one-half per cent; that the commission is divided between the

parties in such cases; therefore a reasonable commission to Gilbert from Smith would be $693.75.

The Chancellor confirmed the Master's report and decreed that defendant was indebted to complainant in the sum of $693.75, and rendered a decree against him. He further found and decreed that Smith was a non-resident of Tennessee within the meaning of the attachment laws, and rendered judgment against the sureties on the forthcoming bond.

Defendant appealed to this court and has assigned errors, which, when summarized, are as follows:

"(1) The court erred in holding that Smith made an agreement with Gilbert to pay him a commission for effecting a sale or exchange of his property.

"(2) The court erred in holding that Smith was a non-resident of Tennessee at the time of the filing of the amended and supplemental bill upon which attachment issued.

"(3) The court erred in sustaining the attachment. It is insisted that the attachment was void, (a) because complainant alleged that Smith had no property within the jurisdiction of the court, (b) because the Williams & Voris Lumber Co. had none of his property, (c) because the amended bill failed to allege that claim sued on was just, (d) because the attachment was against Williams & Voris Lumber Co. and not against Smith.

"(4) The court erred in rendering judgment on the forthcoming or replevy bond, as no property was attached."

H. A. Gilbert is a licensed real estate agent in Chattanooga. In 1928 he had his office with S. P. Long & Co., real estate agents.

T. J. Stone owned a tract of timber in Dade County, Ga., near the Nick-a-Jack Cave, which he desired to sell. There was a mortgage of $4000 on this property. He listed it with Gilbert.

D. D. Smith and his two brothers owned a farm of about 800 acres in Rhea County, Tenn., known as the Dietzen farm, on which was a mortgage of $13,000. D. D. Smith was adjudged a bankrupt, and appraisers were appointed by the bankruptcy court to appraise the farm, who reported that there was no equity above the encumbrances on same, and it was released from the bankruptcy proceedings. Smith's brothers agreed that he might trade the whole farm in his name.

Smith and Noah Manning wanted to buy timber. They went to the office of S. P. Long & Co. and asked if they had any timber for sale. J. B. Irwin, a dealer in real estate, but not licensed, told them about the Stone tract of timber. At the time of this visit something was said about Smith's wishing to sell his farm in Rhea County. Smith testified: "I didn't have it listed with anybody. I told Mr. Long

quite a while before that it was for sale, and whoever sold it I would pay them for their trouble.''

Irwin informed Gilbert that Smith was in the market for timber and wished to sell his farm.

Gilbert carried Stone to see Smith's farm and took Smith and Manning to see Stone's timber. Gilbert arranged a meeting between Stone and Smith with a view to bringing about an exchange of their properties. Smith and Stone were unable to agree upon the valuations to be put upon their properties. Stone valued the timber at $48,000 to $58,000. Smith valued the farm at $30,000. Later Smith gave his interest in the farm for a one-half interest in the timber. Afterwards he purchased the other one-half interest in said timber for $7,500 and traded a lot of cattle and farming tools which he estimated at $2,500 as a part of the purchase price. This trade was finally made without further assistance of Gilbert.

When Smith and Stone were trying to close the trade, or had closed the trade, on the terms finally agreed upon, one-half of the timber in exchange for the farm, they had a conference with Gilbert and offered to pay him a reasonable commission, which he refused to accept, and he insisted upon a commission of $1500.

After the exchange of properties was completed, Smith rented a house in Georgia near the timber tract and he and his wife went to live in same. They left some of their furniture in storage in Chattanooga and moved the rest to the Georgia house where they have lived since the summer of 1928 until recently.

1. Appellant Smith assigns as error the Chancellor's holding that Gilbert was entitled to a commission for the sale of his farm to Stone, and insists: (1) that he did not list the property with Gilbert; (2) that Gilbert was the agent of Stone, only; (3) that Gilbert refused to accept Smith's offer of reasonable compensation and insisted on a commission of $1500; (4) that Stone discharged Gilbert as his agent and thereafter a trade or exchange of the property was made by Stone and Smith without the assistance of Gilbert.

The complainant, Gilbert, testified that he had an express verbal contract with defendant Smith and T. J. Stone that each should pay him $1500 commission for bringing about the exchange of their properties. He testified that Smith listed his property with him at the price of $30,000 and that the farm was worth $30,000. He introduced proof that ten per cent is a reasonable agent's commission for selling farm and timber land, and that it is customary to divide the commission where properties are exchanged. This proof of the value of the farm and percentage of commission supported his claim that exactly $1500 was the commission contracted for.

Defendant denied that an express contract was made to pay Gilbert $1500 and that the amount was arrived at as testified by Gilbert.

. We are of the opinion, as found by the Chancellor, that the weight of the evidence is that no express contract was made for $1500 commission. Smith's own testimony shows an implied promise to pay a reasonable fee for the sale of the farm. The whole testimony shows, as reported by the Master and confirmed by the Chancellor, that both the farm and the timber were first offered at prices greatly in excess of the prices finally accepted; that the farm, first offered at $30,000, was sold for what would amount to about $18,500. The broker is entitled to his commissions on the actual value although the sale is concluded on a basis differing from that which the broker was authorized to negotiate. Siler v. Perkins, 126 Tenn., 380, 149 S. W., 1060, 47 L. R. A. (N. S.), 232.

"If a broker has brought the parties together and as a result they conclude a contract, he is not deprived of his right to a commission by the fact that the contract so concluded differs in terms from the one which he was authorized to negotiate, particularly where the customer procured is able, ready, and willing to enter into a contract on the terms mentioned in the broker's authorization. Where for example the principal consummates a sale to a purchaser found by the broker, he is liable for the commission, although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional on a sale at the price mentioned in the broker's authorization; and this rule applies although the principal accepts property in lieu of cash, although the sale is made on better terms than those authorized, or although the sale, as finally made by the owner, includes property which the broker was not authorized to sell." 9 C. J., 600, sec. 89.

The Master and Chancellor found that seven and one-half per cent was the customary commission on such sales. Complainant's commission, therefore, should be one-half of seven and one-half per cent of $18,500, or $693.75.

"In estimating the commission on an exchange of real estate the actual and not the trade value of the property should be taken as the basis; and in the case of a sale commissions should be allowed only on the amount which was the real consideration for the property sold. Commissions must be estimated on the whole value of the property without regard to encumbrances, in the absence of a specific agreement to the contrary." 9 C. J., 582, sec. 80; Bryan v. Purnell, 5 Higgins, 623.

"When the owner employs the agent to sell, or to assist him in the sale, if he be unwilling to pay the usual and customary commissions he should make a special contract with him, other-

wise the agent will be entitled to such reasonable commissions as, for similar services, real estate agents in that particular locality are by usage and custom entitled." Arrington & Farrar v. Cary, 5 Baxt., 609.

Gilbert had secured the purchaser, Stone, and introduced Stone and Smith and showed the property of each to the other, so he was therefore the producing cause of the exchange of Smith's property. The fact that Smith and Stone later carried out the exchange without the assistance of Gilbert cannot defeat Gilbert's claim for compensation. Bryan v. Purnell, supra; Siler v. Perkins, supra; Royster, Waldran & Bacon v. Mageveney, 77 Tenn., 148; Arrington & Farrar v. Cary, supra.

The proof fails to show a revocation of authority to Gilbert to sell the properties and negotiations later taken up by the parties. It appears that both parties started the negotiations with the values of their respective properties greatly exaggerated, but finally arrived at a basis on which they could trade; that this was not a subsequent trade but the outcome of the original negotiations.

"After a broker has found a customer and commenced negotiations, neither the principal nor the customer can break them off and defeat the broker's right to a commission by concluding the transaction without his aid. Nor can a principal reject an offer made by a person found by a broker and then without the broker's intervention sell to the same person and thus defeat the broker's right to a commission. A broker is entitled to a commission for effecting a sale, although he takes no part in the negotiations, where the sale is effected as the result of his introducing the customer and the principal or of his putting them into communication; the principal cannot defeat the right to compensation by closing the transaction directly with the customer without the broker's further aid." 9 C. J., 619, sec. 99; Sylvester v. Johnson, 110 Tenn., 392, 75 S. W., 923.

2. We are of the opinion that the Chancellor was correct in holding that Smith was a non-resident of the State of Tennessee within the meaning of the attachment laws.

"The courts . . . have construed the word 'nonresident,' in attachment statutes, to refer to the abode or place where the defendant actually lives, and hold that he may be domiciled within the State and still be a nonresident. Keelin v. Graves, 129 Tenn., 103, 165 S. W., 232, L. R. A. 1915A, 421; cases collected in 26 A. L. R., 188." Brown v. Brown, 150 Tenn., 89, 261 S. W., 959; Stratton v. Brigham, 2 Sneed, 420; Foster v. Hall, 4 Humphr., 345; Cain v. Jennings, 3 Tenn. Chy., 131; Kellar v. Baird, 5 Heisk., 39.

The case of Tigret v. Walker, 2 Higgins, 567, is very much in point. It was held in that case:

"One who sells all his personalty except some bedding, which he stores away, and goes out of the state to be gone a year, and takes with him his family of four children, and takes employment out of the state, and sends his children to the public schools of the state to which he has gone, and who has been away from December till May, is a non-resident of Tennessee, in the sense of our attachment laws, though he retain his citizenship here, and retain the bedding which he has stored away, and means to return at the end of the year."

3. We are of the opinion that the attachment in this case was not void, as insisted by defendant in the third assignment above set out. However, this question cannot be raised in this court. No motion to quash the attachment and no defense was raised to the attachment in the lower court other than that raised by the plea in abatement. If the defects appear on the face of the pleading or attachment writ, a motion to quash the attachment or a demurrer must be filed, otherwise the defenses should be raised by plea in abatement or they will be waived. Padgett v. Ducktown, etc., Iron Co., 97 Tenn., 689, 37 S. W., 698; Boyd v. Buckingham & Co., 10 Humphr., 433; 1 C. J., 138, sec. 218.

"A motion to quash, not a plea, is the proper method to raise the question of legality of service of process when all the facts appear upon the face of the papers." Padgett v. Ducktown, etc., Iron Co., supra.

"When a defect appears on the face of the attachment, it is not necessary that the legal question should be raised by a plea in abatement; but in such a case the proper practice is a motion to quash. The plea in abatement becomes necessary only where the particular defect is not apparent on the face of the record. Shannon's Code, sec. 5236." Bryan v. Railroad, 119 Tenn., 349, 354, 104 S. W., 523.

Defendant filed a plea in abatement to the attachment, setting up only one ground, that the defendant was not a non-resident of the State of Tennessee as alleged in the amended and supplemental bill. All other grounds for abatement were therefore waived.

"In equity matter in abatement must be presented as a preliminary question and, as at law, will generally be waived by answering to the merits or by demurring to the bill, either generally or specially on other grounds." 1 C. J., 260, sec. 576; Brazelton v. Brooks, 2 Head., 194; Tyler v. E. G. Bernard Co. (Ch. A.), 57 S. W., 179.

Later he moved the court to dismiss the amended and supplemental bill because it was filed without leave of the court, but this

did not raise the defenses as to defects in the attachment. The action of the Chancellor in overruling the motion is not assigned as error.

4. The attachment not having been attacked in the lower court, except on the proposition of nonresidence, which was overruled by the court, the court was not in error in rendering a decree on the forthcoming bond.

Where one sued afterwards leaves the state, the complainant may sue out an ancillary attachment. Gibson's Suits in Chancery, sec. 879.

It is insisted that no property was attached, in that, defendant Williams & Voris Lumber Co. answered in the garnishment proceeding that they owed Smith nothing. However, they admitted having purchased the timber and having entered into a written contract with Smith by which they had furnished Smith $10,000 to pay off some encumbrances on the timber and for equipment for cutting and delivering the timber to the Company at certain prices set out in the contract, to be credited on the advancement and any future advances made by the Company to Smith until the Company was paid, and that Smith then owed the Company $9923.27; that Smith had certain timber cut, ready to be delivered to them, but it was then necessary for the Company to advance to Smith another amount on the timber for the purpose of defraying the expenses of cutting and delivering the same to the Company, and that no more timber would be delivered to the Company unless they made further advancements to Smith along as necessary to pay the expenses of cutting and delivering the timber and that the timber would be seriously damaged should it remain cut down in the woods. The Company further answered that it was impossible for them to estimate the number of feet of timber on the tract or the amount that Smith would deliver to them under the contract, and, therefore, it was impossible to state what they would owe Smith under this contract in the future.

The complainant excepted to the sufficiency of the answer and asked the court to require them to answer more in detail. The answer to a garnishment proceeding in chancery may be contested. Gibson's Suits in Chancery, sec. 881.

At this juncture the defendant moved the court to be permitted to file a forthcoming bond in the sum of $3000 in lieu of the attachment and garnishment proceedings, which was granted by the court in an order as follows:

"The defendant, D. D. Smith, having moved the court for leave to give bond in lieu of the attachment and garnishment issued in this cause, and it appearing to the court that said motion is well taken, and the defendant, D. D. Smith, has executed

and filed a bond in the sum of $3000 approved by the Clerk and Master, it is ordered that the garnishee in this cause be and it is hereby dismissed and released and the attachment discharged.''

The bond was filed on September 7, 1929, and was signed by D. D. Smith as principal and Rose Bernhardt and L. Pearlman as sureties, and gives a brief review of the litigation and states that the complainant, Gilbert, had filed an amended and supplemental bill, sued out an attachment and garnishment in this cause to impound the property of the defendant, Smith, in the hands of the Williams & Voris Lumber Co., on the ground that Smith was a non-resident of the State of Tennessee, and that Smith had filed a plea in abatement to the said attachment, which bond concludes, ''Now, the condition of this obligation is such that if the complainant is successful in maintaining his attachment, then this obligation shall remain in full force and effect, but should the complainant fail in sustaining his said attachment, then this bond shall be for nothing held.''

The proof showed that there were approximately twenty-five million feet of timber on this tract, which, at the contract prices, would probably have much exceeded the advancements made; but the garnishment proceeding as against the defendant Williams & Voris Lumber Co. was abandoned and no further proof was taken on that question as the bond was taken in lieu of the garnishment proceeding, but proof was taken as to Smith's non-residence on the issue raised by the plea in abatement. The complainant was prevented from further pursuing the garnishment proceeding by the action of defendant Smith, who of his own motion was permitted to file the forthcoming bond in lieu of the garnishment proceeding, and the only issue thus left on that proposition was whether Smith was a non-resident. This proposition we have hereinabove disposed of.

Ordinarily the defendant would not have been estopped to attack the attachment in the lower court, had the attachment been void, because of the execution of the forthcoming bond. N. Y. Cas. Co. v. Lawson, 160 Tenn., 329, 24 S. W. (2d), 881; Dickinson v. Redmond, 3 Shan. Cas., 620, 622-3.

In the N. Y. Cas. Co. v. Lawson, supra, case it was held that the execution of a replevy bond in a void attachment suit does not estop defendant to attack the attachment.

''The defendant is not estopped to deny the legality of the ancillary attachment proceeding under which he was deprived of his property, by the execution of a replevy bond by which he regained possession of the property, but he is estopped to dispute the validity of the replevy bond on the faith of which he obtained the property.'' Dickinson v. Redmond, supra.

But in this case Smith, himself, limited this part of the proceeding to the question of non-residence alone, as he was permitted to substitute bond in lieu of the garnishment proceeding against the Williams & Voris Lumber Co.

This bond does not fix the value of the property but is in double the amount of the alleged debt.

This forthcoming bond was a replevy bond (Shannon's Code, sec. 5269) which is subject to the rules prescribed in sections 1094 and 1095 of the Code (Shannon's Code, sec. 5272). The courts cannot read conditions into bonds not therein stated, but the parties are liable in accordance with the statute. Fidelity & Guaranty Co. v. Rainey, 120 Tenn., 357, 113 S. W., 397.

The parties only owned the timber and the land was owned by one Newsom. All of the deals were concerning timber which was agreed to be severed before sale or under the contract of sale and was therefore personalty. Uniform Sales Act of 1919, ch. 118, sec. 76. The proceeding being an attachment by garnishment it would only affect the proceeds of the sale of the timber to the Williams & Voris Lumber Co., and, therefore, defendant Smith had a right to execute a replevy bond.

Shannon's Code, section 5269, provides with respect to replevy bonds that the defendant may execute a bond, payable to the plaintiff, either in double the amount of the plaintiff's demand, or, in double the value of the property attached, ''conditioned to pay the debt, interest, and costs, or the value of the property attached, with interest, as the case may be, in the event he shall be cast in the suit''; hence, it is immaterial whether the express conditions of the statute are actually written into the face of the bond, for the law reads the statute into every bond. Fidelity & Guaranty Co. v. Rainey, supra.

Section 1095 of Shannon's Code provides:

''So, also, if any officer or other person, as hereinafter provided, who is required by law or in the course of judicial proceedings to give bond for the performance of an act or the discharge of duty, receives money or property upon the faith of such bond, he and his sureties are estopped to deny the validity of the bond or the legality of the proceedings under which the money or property was obtained.''

And section 1097 of the Code provides:

''The provisions of the four preceding sections of this article apply to the bonds of executors, administrators, guardians, special commissioners, receivers, and others required by law or in the course of judicial proceedings to execute bonds for the performance of particular acts or the discharge of duty.

512

"A party obtaining a replevy of property attached, is estopped to deny the validity of the bond or proceedings under which he gets the possession.

"A defendant in attachment, having the option to give replevy bond for the return of the property or the payment of the debt in the event of decree against him, if he give bond to pay the debt, cannot prevent a decree on the bond by showing that he did not have title to the property." Stephens v. Greene County Iron Co., 11 Heisk., 71; Upton v. Philips & Howe, 11 Heisk., 215; Patterson v. Tate, 141 Tenn., 607, 213 S. W. 981; Mercer v. Ewing, 6 Higgins, 384.

The contention that there was no consideration for the execution of the bond is not well made. The defendants were relieved from further prosecution of the garnishment proceeding and were allowed to cut and remove the timber at will, which was sufficient consideration for the execution of the bond. Danheiser v. Germania Savings Bank & Trust Co., 137 Tenn., 650, 194 S. W., 1094.

The concurrent finding of the Master and Chancellor as to the value of the property and as to the broker's commission, is conclusive on us. Dale v. Hartman, 157 Tenn., 60, 6 S. W. (2d), 319.

The sureties on the bond did not appeal, but appeal by the principal takes up the case as to the sureties on such bond. Sullivan v. Eason, 8 Tenn. App., 429.

All of the assignments of errors having been overruled, the decree of the Chancellor must be affirmed. A decree for $693.75 and interest from March 13, 1931, to the present, and the cost of the cause including the cost of the appeal, will be entered in this court in favor of H. H. Gilbert and against D. D. Smith and the sureties on the forthcoming bond, for which executions may issue.

Faw, P. J., and DeWitt, J., concur.