IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 23, 2004 Session

# THERESA CALDWELL, ET AL. v. CANADA TRACE, INC.

**Direct Appeal from the Circuit Court for Shelby County
Nos. 90025 T.D. & 90029 T.D.    Karen R. Williams, Judge**

---

**No. W2003-00264-COA-R3-CV - Filed June 28, 2004**

---

This case involves the attachment of a mobile home and its subsequent transport to a storage facility. The Appellee sued out an attachment on the Appellants' mobile home to secure payment of past rent due on a tenancy at Appellee's trailer park. Appellee had the mobile home transported after it was attached and Appellants sued Appellee for damages to the mobile home. The Shelby County General Sessions Court found in favor of Appellants, and Appellee appealed to the Circuit Court. The Circuit Court found in favor of Appellee, and Appellants now appeal to this Court. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,
Reversed in Part & Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

W. Ray Jamieson, Memphis, TN, for Appellant Theresa L. Caldwell

William E. Friedman, Memphis, TN, for Appellants M. J. Pocrass & Susan Pocrass

J. D. Barton, Millington, TN, for Appellee

## OPINION

### Facts and Procedural History

Susan and M.J. Pocrass (collectively the "Pocrasses") purchased a 1997 Clarksdale model mobile home on July 24, 1996, for the sum of $25,780.85. Shortly thereafter, the Pocrasses entered into a lease contract with Canada Trace, Inc. ("Canada Trace" or "Appellee") for a periodic tenancy of a pad in Appellee's mobile home park, and the Pocrasses moved their mobile home to that pad.

However, the Pocrasses did not live in the mobile home and would visit only once a week to maintain the home and wash laundry.

As a result of complaints against the Pocrasses by other tenants in the mobile home park and the fact that the Pocrasses continued to pay rent with out-of-state checks, Appellee attempted to terminate the Pocrass' tenancy. Appellee filed a series of forcible entry and detainer ("FED") actions, the first two of which the General Sessions Court found in favor of the Pocrasses. The Pocrasses continued to attempt to tender payment of rent to Appellee from November 1996 through February 1997, but each attempt was refused by Appellee. Appellee filed a third FED action on March 5, 1997, but unlike the first two actions, the warrant was returned with a "not to be found" notation made by the private process server. After the filing of this third action, the Pocrasses signed a bill of sale transferring the mobile home to Theresa Caldwell ("Caldwell" or collectively with the Pocrasses, the "Appellants"), their attorney in Arkansas, on March 21, 1997, in return for services rendered in a matter pending in Arkansas. Though the Pocrasses and Caldwell contend that such agreement only provided Caldwell with a security interest in the home, the document entitled "Bill of Sale" appears to transfer ownership of the mobile home to Caldwell and states:

> KNOW ALL MEN BY THESE PRESENTS:
>
> That I, the undersigned, of Memphis, Tennessee in consideration of the sum of Twenty Thousand Dollars ($20,000) to me paid by Theresa L. Caldwell, the receipt whereof is hereby acknowl-edged, does hereby grant, sell, transfer and deliver unto the said person the following goods and chattels:
>
> One Delta 16 X 80 1997 Clarksdale MSD971680SN1066 Mobile Home
>
> HAVE AND TO HOLD all and singular the goods and chattels unto the grantee(s) his/her/their legal representatives, heirs and assigns, to his/her/their own use and behoof forever.
>
> And the undersigned does hereby covenant with said grantee(s) that he/she/they is/are the lawful owner of said goods and chattels; that the same is free and clear from all encumbrances; that he/she/they has/have good right to sell the same as aforesaid, and that he/she/they will warrant and defend the same against the lawful claims and demands of all persons.
>
> Dated at Little Rock, Arkansas, this 21 day of March, 1997.
>
> /s/ M.J. Pocrass
> /s/ Susan Pocrass

Neither the Pocrasses nor Caldwell notified Appellee that the Pocrasses had given Caldwell title to the mobile home. In addition, Caldwell never registered the title of the mobile home in her name.

Publication was made on April 16, 23, 30 and May 7, 1997, but neither the Pocrasses, Caldwell, or their counsel, appeared for a hearing, and judgment for possession of the trailer park pad was rendered in favor of Appellee. A writ of possession was issued by the General Sessions Court on June 4, 1997, but this writ was not executed by the sheriff's office, and counsel for Appellee advised the sheriff's office to let the writ die. Subsequently, Appellee filed a fourth complaint in the General Sessions Court, seeking overdue rent in the amount of $1,309 for the plat on which the mobile home continued to sit. Again, service of process was attempted at the mobile home and the hotel at which the Pocrasses had resided previously, but it was returned "not to be found." The Pocrasses gave no notice to Appellee of where they could be located. In addition, the attorney who represented the Pocrasses in the first two FED actions initially refused to accept service for the Pocrasses.

On June 25, 1997, Appellee secured an attachment of the mobile home from the General Sessions Court, and it was executed by taping notice of the attachment to the mobile home door. On June 26, 1997, the Pocrass' attorney accepted service of process for the Pocrasses when it was discovered that the mobile home had been attached. After the issuance of the attachment, the employees for Appellee positioned a backhoe in front of the trailer, preventing its removal by Appellants. While encumbered by the judicial attachment, Appellee paid Dick Moore, Inc. ("Dick Moore") to transport the home to Dick Moore's storage facility and it did so on July 11, 1997. There is no evidence that the sheriff was consulted or was present for such transport of the home.

When Appellants saw the mobile home at Dick Moore's storage facility, it had sustained widespread damage, including a flat tire, splitting walls, uneven walls and flooring, crushed siding, sagging spots in the floor, debris spread over the living room floor, and destruction of the home's porch. As a result, Caldwell took bids for the sale of the home and sold the mobile home to Dick Moore for $13,000. In addition, Caldwell gave Dick Moore a release from any liability for an additional $1,000. In October 1997, Dick Moore performed some repairs to the mobile home and sold it for $25,600.

In July 1997, Caldwell intervened in the suit and filed a motion to quash the attachment of the mobile home based upon a lack of a diligent search for her or the Pocrasses. On July 31, 1997, the General Sessions Court quashed the judicial attachment and reserved hearing the issue of damages until August 13, 1997. The Pocrasses brought a suit against Appellee on August 15, 1997 for damages based on wrongful attachment of the mobile home. On August 21, 1997, the General Sessions Court awarded a judgment to the Pocrasses against Appellant for $25,000. That same day, the General Sessions Court awarded Caldwell a judgment against Appellant for $25,000. Appellee appealed both judgments to the Circuit Court of Shelby County and the two cases were consolidated

into one proceeding.[1]  After a hearing on the issues, the Circuit Court awarded a judgment in favor of Appellee in the amount of $1,122 for past rent due[2] and found that Appellants' complaints were without merit.  Appellants appeal to this Court and present the following issues, as we perceive them:

> I.      Whether the trial court erred when it found that the attachment of the mobile home was not wrongful; and
>
> II.     Whether Appellants should be entitled to damages based upon the actions of Appellee in transporting the mobile home.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## Standard of Review

"Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."  Tenn. R. App. P. 13(d).  For questions of law, our scope of review is *de novo* affording no presumption of correctness to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## Wrongful Attachment

On appeal, Appellants challenge the trial court's finding that the judicial attachment of the mobile home was proper when issued.  Specifically, Appellants argue that the attachment was improper (1) for lack of an affidavit stating both that the amount of the debt owed and that it is a just claim, as required by Tenn. Code Ann. § 29-6-113; (2) for lack of a sufficient bond posted by Appellee pursuant to Tenn. Code Ann. §§ 29-6-115 and -116; (3) for the excessive levy as prohibited by Tenn. Code Ann. § 29-6-134; and (4) for lack of a diligent search for Appellants in serving process prior to the attachment.  We will address each one of these challenges in turn.

## Affidavit

Appellants argue that the attachment of the mobile home was wrongful because Appellee never executed an affidavit stating the nature of the debt and that it was a just claim.  Pursuant to Tenn. Code Ann. § 29-6-113 (1997), "[i]n order to obtain an attachment, the plaintiff, his agent or

---

[1]     On January 23, 2002, Appellee Canada Trace filed a third party complaint against Kenneth and Barbara Day, two of its former employees, who managed the trailer park in 1996 and 1997.  However, the Circuit Court rendered a judgment in favor of the Days and the Appellee does not appeal this decision.

[2]     The trial court deducted the Pocrass' original deposit of $187 from the debt sued upon.  This award is not appealed by Appellants.

attorney, shall make oath in writing, stating the nature and amount of the debt or demand, and that it is a just claim . . . and, also, that one or more of the causes enumerated in § 29-6-101 exists." In addition, Tenn. Code Ann. § 29-6-123 (1997) states that "[a]ttachments issued without affidavit and bond, as herein prescribed, may be abated by plea of the defendant." We also note that "[i]f the defects appear on the face of the pleading or attachment writ, a motion to quash the attachment or a demurrer must be filed, otherwise the defenses should be raised by plea in abatement or they will be waived." *Gilbert v. Smith*, 14 Tenn. App. 500, 508 (Tenn. Ct. App. 1932) (citing *Padgett v. Ducktown Sulphur, Copper & Iron Co.*, 37 S.W. 698 (Tenn. 1896)). A plea in abatement only becomes necessary when the defect complained of does not appear on the face of the proceedings. *Id.* (quoting *Bryan v. Norfolk W. Ry. Co.*, 104 S.W. 523, 524 (Tenn. 1907)). Lack of an affidavit is such an apparent defect that a plea in abatement is not required to challenge such defect.[3] However, after our review of the record, we cannot say that such attachment was wrongful for lack of an affidavit. Though no such affidavit signed by Appellee, its agent or attorney, appears in the record, the Appellants did not challenge such defect in a motion to quash or a plea in abatement. The Tennessee Code and our jurisprudence place the burden of challenging an attachment for lack of an affidavit on the defendant, in this case the Appellants. No such motion to quash or plea in abatement alleging a lack of an affidavit appears in the record.

**Sufficiency of Bond**

Appellants also challenge the propriety of the attachment, contending that the bond posted by Appellee was insufficient in amount. As stated in Tenn. Code Ann. § 29-6-115 (1997):

> The officer to whom application is made, shall, before granting the attachment, require the plaintiff, his agent or attorney, to execute a bond with sufficient security, payable to the defendant, and conditioned that the plaintiff will prosecute the attachment with effect, or, in case of failure, pay the defendant all costs that may be adjudged against him, and, also, all such damages as he may sustain by the wrongful suing out of the attachment.

Because it is undisputed that the mobile home was worth more than the debt owed by the Pocrasses, Tenn. Code Ann. § 29-6-116(1) (1997) applies stating the appropriate amount of the bond:

> When the amount of the claim is less than the value of the property sought to be attached, a bond in a penalty equal to the asserted amount of the plaintiff's or complainant's debt or lien plus an additional sum which in the opinion of the issuing officer will be sufficient to cover the probable cost of litigation and all damages that may be sustained by reason of the wrongful suing out of the writ. . . .

---

[3] We note that demurrers and pleas in abatement have been superceded by the Tennessee Rules of Civil Procedure. See Committee Comment, T.R.Civ.P. 12.02.

We note that the sufficiency of the bond was not raised by Appellants in the pleadings or during the hearing. "[A]ppellate courts will ordinarily decline to consider issues being raised for the first time on appeal" and "[t]hus, arguments not asserted at trial are deemed waived on appeal." *Villages of Brentwood Homeowners Assoc., Inc. v. Westermann*, No. 01A01-9708-CH-00388, 1998 Tenn. App. LEXIS 367, at *5 (Tenn. Ct. App. June 5, 1998) (citing *Civil Serv. Merit Bd. v. Burson*, 816 S.W.2d 725, 734-35 (Tenn. 1991); *Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996); *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995)). Therefore, we decline to address the sufficiency of the bond posted by Appellee before the execution of the attachment.

## Excessive Levy

Next, Appellants argue that, because the mobile home was worth more than the debt sued upon, the attachment of the home was wrongful because it was an excessive levy. Specifically, Appellants cite Tenn. Code Ann. § 29-6-128 (1997), which states that "[t]he writ of attachment should direct so much of the property of the defendant to be attached as will be sufficient to satisfy the plaintiff's debt or demand, and all costs." For violation of this provision, Tenn. Code Ann. § 29-6-134 (1997) establishes that "[i]f the officer make an excessive levy, he shall be liable as in case of excessive levy by execution." While the Tennessee Code does not establish any liability for the Appellee as plaintiff in the action, the Tennessee Supreme Court has described the requirements for holding such plaintiff liable for excessive levy as follows:

> If a sheriff make an excessive levy he is liable to the defendant in the process, and if the plaintiff in the process procures, knowingly, the sheriff to make an excessive levy, he might also be, under proper proceedings, made liable with him. But we are aware of no principle of law that requires a plaintiff to know beforehand the exact amount of property to levy on in order to make his debt; nor do we think that the mere levy upon more than enough can subject him, without more, to an action for a wrongful and malicious use of process. We see very little evidence in this record that the plaintiff was actuated by any indirect or malicious motive in the attachment suit, but as the case must undergo another trial, we make no further comment upon it.

*Beasley v. Johnson*, 57 Tenn. 413, 414 (Tenn. 1873). After our review of the record, we cannot say that the Appellee knowingly procured the sheriff to make an excessive levy by attaching the mobile home or that the Appellee held any indirect or malicious motive for such attachment. The evidence at trial showed that the Pocrasses spent little time in the mobile home, they held no residences which could be attached, and the mobile home itself was locked, preventing attachment of any appliances inside. Therefore, the Appellee may not be held liable for wrongful attachment on the basis of excessive levy.

## Diligent Search

Finally, Appellants argue that the attachment was wrongful for lack of a diligent search by Appellee's private process server prior to the issuance of the attachment. One ground for

attachment, as enumerated in Tenn. Code Ann. § 29-6-101(4) (1997), is "[w]here [the debtor] conceals himself, so that the ordinary process of law cannot be served upon him." Further, "[i]n any civil action, when the summons has been returned 'not to be found in my county,' as to all or any one of the defendants, residents of the county, the plaintiff may have an alias and pluries summons for the defendant, or, at his election, sue out attachment against the estate of such defendant." Tenn. Code Ann. § 29-6-107(a) (1997). The Tennessee Supreme Court has held that the language of "not to be found within [the sheriff's] county" "clearly imports that, after diligent inquiry and search, by the sheriff, at the usual residence of the defendant and elsewhere, he is not to be found, being either actually absent from the county, or having concealed himself so as to evade the service of process." *Welch v. Robinson*, 29 Tenn. 264, 266 (Tenn. 1849). Though a private process server was utilized by Appellee in serving the defendants rather than the sheriff, this Court knows no reason, and Appellee presents no argument, why a private process server should not be held to the same degree of diligence as a sheriff, *see* Tenn. Code Ann. § 8-8-201(10) (1997), given the extraordinary nature of attachment to compel appearance in court. *See Welch*, 29 Tenn. at 266. Therefore, we must examine the evidence and determine if the record supports the trial court's finding that Appellee's process server made a diligent search and inquiry before returning with a "not to be found" return.

In this case, there is evidence that the process server attempted to serve the Pocrasses at the mobile home, which they visited infrequently, and the hotel room at which the process server had found them previously. These two addresses were the only locations at which the Pocrasses were known to reside and there is no evidence the Pocrasses informed the Appellee or its employees of any other location at which they could be found. There is also evidence that, initially and before attachment was issued, the Pocrass' attorney from the first two FED actions refused to accept service for the Pocrasses. In addition, there is no evidence that the Appellee was placed on notice of Caldwell's ownership of the mobile home and, further, no evidence that Caldwell registered title of the mobile home in her name. Therefore, we cannot say that the trial court erred when it found that the Appellee's private process server made a diligent search and inquiry before returning with a "not to be found" return.

### Conversion

Finally, Appellants argue that Appellee should be liable to Appellants for the conversion of the mobile home when Appellee directed Dick Moore to transport the mobile home to Dick Moore's storage facility. "Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights." *H & M Enters., Inc. v. Murray*, No. M1999-02073-COA-R3-CV, 2002 Tenn. App. LEXIS 261, at *7 (Tenn. Ct. App. Apr. 17, 2002) (citing *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965); *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988)). As an intentional tort, conversion requires proof of the following to make out a prima facie case: (1) appropriation of another's property to one's own use and benefit; (2) by the intentional exercise of dominion over it; and (3) in defiance of the true owner's rights. *Id*. (citing *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). One such scenario of

conversion includes dispossessing another of tangible property through the active use of an agent. *Id.* (citing *McCall v. Owens*, 820 S.W.2d 748, 751 (Tenn. Ct. App. 1991)).

We are also mindful that "[g]oods attached are in the custody of the law and an attaching creditor has no property in, or right to, possession of the attached property by reason of the levy." 7 C.J.S. *Attachment* § 229 (1980). Additionally, with respect to the disposition of attached property:

> The attaching officer is not an agent of the attaching creditor with respect to the custody of attached property, and an attaching plaintiff who does not direct the attaching officer as to the care of the property, or who does not otherwise participate in any wrongful act or negligence of such officer, is not liable for injury to, or loss of, the property.

*Id.* § 230. In situations where the attached property suffers injury, the attaching plaintiff is not liable for such injury unless the injury was directly caused by the plaintiff or by the wrongful act of the attaching officer to which the plaintiff directly contributed. *Id.*

It follows from these rules that, if the attaching plaintiff does not utilize the sheriff to oversee the transport of the attached property and causes injury to the property, as in this case, the attaching plaintiff may be held liable for the injury to the attached property. *See id.* If this were not the case, a plaintiff could attach a person's property, direct its disposal without the presence of the sheriff, and escape any possibility of liability since the plaintiff would not have directed the sheriff. Such a situation would encourage circumvention of the proper use of the legal process and run contrary to the rules of attachment.

In this case, Appellee had Caldwell's mobile home attached, and at that time, the home came under the custody of the sheriff of Shelby County. Appellee acted under no authority when it contacted Dick Moore to take the mobile home off its land and to a storage facility. Such an act was an appropriation of Caldwell's property for Appellee's use, which was an intentional exercise of dominion over the mobile home, and in defiance, not only of the true owner's rights, but also in defiance of the legal process, which placed the mobile home under the custody of the law and not the Appellee. Therefore, we must reverse the trial court's decision in so far as it fails to award Caldwell any damages for the injury to the mobile home. We now turn to the question of what damages Caldwell, as owner of the mobile home, is entitled to under these circumstances.

> This Court has addressed the issue of damages in an action for conversion as follows:
> As a general rule, plaintiff's damages in an action for conversion are measured by the sum necessary to compensate him for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. 89 C.J.S., *Trover and Conversion* § 162, 642; *Polskee v. Friedlander*, 8 Tenn. App. 533 (1928).
>
> However consequential damages must be proved with reasonable certainty. *Duff v. Goff*, 98 Idaho 379, 565 P.2d 572 (1977).

The ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest. 89 C.J.S., *Trover and Conversion* § 163, 642.

If special damages are pleaded and proved, plaintiff may recover for all injuries or losses sustained as a proximate result of the conversion, but there can be no recovery for losses or injuries which are too remote or uncertain, or which the plaintiff could have avoided by the exercise of ordinary diligence. 89 C.J.S., *Trover and Conversion* § 170, 648.

Where damages, though the natural results of the act complained of, are not the necessary result of it, they are termed "special damages" which the law does not imply and which must be alleged in order that evidence on the subject may be admissible. *Lasater Lumber Co. v. Harding*, 28 Tenn. App. 296, 189 S.W.2d 583 (1945).

It is generally held that special damages must be particularly averred in the complaint to warrant proof thereof or a recovery therefor. 25 C.J.S. 131, 1185.

...

Ordinarily, in the absence of malicious intent to harm, there can be no recovery for mental anguish or humiliation resulting from conversion of personal property. 89 C.J.S., *Trover and Conversion* § 117, 651.

*Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988). However, in this case, Caldwell resumed ownership of the mobile home when she sold it to Dick Moore, Inc. for $13,000 and collected that sum. As this Court has stated previously:

[I]t is well settled that when the owner of property, after a technical conversion, resumes possession of the property as the owner this constitutes a waiver of the tort of conversion. *Scruggs v. Davis*, 37 Tenn. (5 Sneed) 261, 265 (1857); *see Huffman v. Hughlett & Pyatt*, 79 Tenn. (11 Lea) 549 (1883). The owner still has the right to sue in trespass on the case for the damages sustained. *Scruggs*, 37 Tenn. (5 Sneed) at 265. The measure of damages for each action is laid down in *Traynor v. Johnson*, 38 Tenn. (1 Head) 51 (1858):

> The only material difference between trover and case is in respect to the rule of damages peculiar to each action. In trover, upon the fact of conversion alone, the value of the property is recoverable as a matter of course; whereas, in case the damages are measured by the nature and extent of the injury, and the value, or a less amount, may

be allowed by the jury, according to the intrinsic merits of each particular case.

*Id*. at 55.

*Via v. Prod. Credit Assoc.*, 1989 Tenn. App. LEXIS 340, at *5-6 (Tenn. Ct. App. May 9, 1989). In this case, there was undisputed testimony that, after the mobile home was transported by Dick Moore, upon Appellee's direction and supervision, the mobile home sustained actual damage to one of the tires, the walls, the flooring, the porch, and the appliances inside the home. The damage award for injury to a chattel is the diminution in value of the chattel, that is the difference between the fair market value of the property before the injury and the fair market value of the property after the injury. 75 Am. Jur. 2d *Trespass* § 139 (1991). As stated above, from the record it appears that the Pocrasses transferred ownership of the mobile home to Caldwell, and, thus, cannot make out a claim for damages to the mobile home. Therefore, we remand this case for a determination of damages that Caldwell, as owner of the mobile home, is entitled to as a result of Appellee's trespass.

### Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to Appellee, Canada Trace, Inc., and Appellants, M.J. Pocrass, Susan Pocrass, and Theresa Caldwell, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE